UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

EDWARD BYRDSONG,        )
        )
        )
v.        )        No. 1:08-cr-56/1:09-cv-249
        )        *Chief Judge Curtis L. Collier*
UNITED STATES OF AMERICA        )

## MEMORANDUM

Edward Byrdsong ("Byrdsong") timely filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Criminal Court File No. 433).[1] Byrdsong subsequently filed three motions–two requesting to amend his § 2255 motion and one requesting an evidentiary hearing (Criminal Court Docs. 462, 468, 469). Byrdsong contends, *inter alia*, that he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution. The Government opposes Byrdsong's § 2255 motion (Criminal Court Doc. 465).

The motions, together with the files and record in this case, conclusively show Byrdsong is entitled to no relief under 28 U.S.C. § 2255. For the reasons which follow, the Court has determined an evidentiary hearing is unnecessary, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993), Byrdsong's motions to amend and requesting an evidentiary hearing will be **DENIED** (Criminal Court File Nos. 462, 468, 469), and his § 2255 motion will be **DENIED** for lack of merit (Criminal Court File No. 433).

## I.    PROCEDURAL BACKGROUND

On May 13, 2008, a grand jury for the Eastern District of Tennessee, Chattanooga Division filed an eight-count indictment charging twenty-one different individuals including Byrdsong with

---

[1]    Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

conspiracy to distribute cocaine and cocaine base and other drug offenses. Count One charged all twenty-one individuals with conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base, or crack, in violation of Title 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). Byrdsong pleaded guilty to Count One on September 17, 2008 pursuant to the terms of a written plea agreement with the government (Criminal Court Doc. 420, Plea Hr'g Tr.). On December 18, 2008, the Court sentenced Byrdsong to a term of 130 months of imprisonment (Criminal Court Doc. 421, Sentencing Hr'g Tr.). No direct appeal was filed.

The 2008 version of the United States Sentencing Guidelines ("USSG") were used to calculate Byrdsong's offense level in his presentence investigation report ("PSR"). The base offense level for a violation of 21 U.S.C. § 846 is found in USSG § 2D1.1. The offense level specified in the Drug Quantity Table under USSG § 2D1.1(c)(4) sets a base offense level of 32 for five kilograms to fifteen kilograms of cocaine. No enhancements were added to Byrdsong's base offense level, but he did receive a three-point reduction for acceptance of responsibility. Thus, his total offense level was 29. Having accumulated twelve criminal history points for past offenses ranging from driving on a revoked license to possession of crack cocaine, Byrdsong was classified as a Category V offender under the Sentencing Table at USSG Chapter 5, Part A.

As a level 29 category V offender, Byrdsong's advisory sentencing Guidelines were 140 to 175 months of incarceration. A statutory minimum imposed by 21 U.S.C. § 841(b)(1)(A) of 120 months was also applicable. In light of the nature of Byrdsong's past offenses, none of which were felonies, the Court accepted defense counsel's motion to treat Byrdsong as a Category IV offender, which reduced his Guidelines to 121-151 months imprisonment (Criminal Court Doc. 420, at 11).

The Court then imposed a sentence of 130 months, which was within the adjusted advisory range. Byrdsong timely filed the instant § 2255 motion to vacate or set aside the judgment or to correct the sentence (Criminal Court Doc. 433).

## II. STANDARD OF REVIEW

This Court must vacate and set aside a sentence if it finds "the judgment was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, . . . the sentence was in excess of the maximum authorized by law, or otherwise subject to collateral attack, . . ." 28 U.S.C. § 2255(a).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error most be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands

of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

Further, a § 2255 motion is not a substitute for a direct appeal, and it cannot do service for an appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Grant,* 72 F.3d at 506; *United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984). Thus, Byrdsong cannot use a § 2255 motion to litigate issues that should have been presented and decided on direct appeal unless (1) cause is shown for the tardy challenge and (2) actual prejudice resulting from the error is demonstrated. *United States v. Frady*, 456 U.S. 152, 167-68 (1982). Alternatively, Byrdsong could raise such issues if he can show that he is actually innocent of the crime. *See Bousley*, 523 U.S. at 622.

## III.    FACTS

The following pertinent facts are taken from the PSR prepared by the United States Probation Office:

13.     In 2006, agents with the Drug Task Force in Hamilton County, Tennessee, began an investigation into cocaine and crack cocaine trafficking in the Chattanooga area. From the middle of 2006 through 2007, agents gathered information from Cooperating Informants and made several undercover drug buys. They were able to initiate wiretaps of some of the individuals under investigation. The full investigation revealed a main supplier of cocaine in the area, Demarcus Akins. Akins is indicted separately from all other participants in the group.

14.     Akins supplied Marcus Lewis; therefore, a group of individuals associated with Lewis was supplied, including Edward Byrdsong, . . . .

18.     The investigation included interviews, arrests, searches, and some undercover drug buys. The wire taps in the case ran for approximately five months and provided most of the information used to charge each defendant and to determine drug amounts. Surveilled phone calls were used to determine drug amounts where amounts were actually discussed. This included actual pick-up and delivery of cocaine as well as money. Using actual determinable amounts, it appears that at least 40 kilograms of cocaine was delivered to Chattanooga during the five months

covered by the wiretaps. Many phone calls indicating delivery of cocaine or payments for cocaine did not have specific amounts discussed and were therefore not used to establish the 40-kilogram amount.

19.    What follows is specific information regarding the defendant's role in the offense and the drug quantities for which he is being held responsible.

20.    Edward Byrdsong is a close associate of Marcus Lewis's. There were 59 drug related calls identified between the two during the wiretap investigation. Mr. Byrdsong's involvement in the offense started in October 2007, before the time frame of the wire taps. In many of the calls between Mr. Lewis and Mr. Byrdsong, Mr. Byrdsong appears to complain to Mr. Lewis about Mr. Lewis being late with drug deliveries. During the calls, Mr. Byrdsong often told Mr. Lewis that he had people waiting. Surveillance of meetings between Mr. Lewis and Mr. Byrdsong following phone conversations indicate that Mr. Byrdsong was a primary customer of Mr. Lewis's. Agents believe that in the following conversation, Mr. Byrdsong is receiving two kilograms of cocaine powder from Mr. Lewis:

ML: YEAH
EB: WHERE YOU AT DUDE?
ML: FENNA GO OVER OLD GIRL CRIB.
EB: HUH?
ML: FENNA GO OLD GIRL CRIB.
EB: WHO CRIB?
ML: NIKI
EB: WHERE THEM THING AT MAN[?]
ML: I GOT TWO OF THEM OVER HERE WITH ME NOW.
EB: WHERE YOU AT?
ML: AT HER CRIB.
EB: AT HER CRIB?
ML: YEAH FENNA PULL UP NOW[.]
EB: FENNA LEAVE MY CRIB.
ML: I'M GONNA STAY OVER HER CRIB.
EB: …inaudible…
ML: COME ON MAN I'M FENNA BE RIGHT THERE BRO.
EB: HUH
ML: I'D COME OUTSIDE DOUGH.
EB: ALRIGHT

21.    Two defendants charged in other cases, Jordan Bowers and Jeremy Johnson, have identified Mr. Byrdsong as their source for cocaine and crack cocaine. They provided Mr. Byrdsong's phone number to agents. According to the investigation, based upon the wire tap conversations and information from Cooperating Individuals, Mr. Byrdsong is responsible for the distribution of at least **five**

**kilograms of cocaine powder and 50 grams of cocaine base.**

(PSR, at 5-6).

## IV.    ANALYSIS

Byrdsong's § 2255 motion to vacate contains claims which are intertwined and confusingly pled, principally pertaining to ineffective assistance of counsel. Byrdsong maintains that his guilty plea was involuntary because of counsel's purported ineffectiveness and because, according to Byrdsong, when the magistrate judge conducted the Rule 11 colloquy she allegedly failed to both adequately explain the elements of the offense and to establish a factual basis for his plea. Byrdsong also faults counsel for allegedly inducing him to plead guilty and for failing to object to the drug quantity attributed to Byrdsong in the PSR.

Byrdsong's first motion to amend alleges that the Fair Sentencing Act of 2010 might justify a reduction in his sentence (Criminal Court Doc. 462). Byrdsong's second motion to amend alleges that counsel refused to listen to Byrdsong's reasons for wanting to appeal and that such conduct constitutes ineffective assistance (Criminal Court Doc. 469). Although exhaustive, none of Byrdsong's claims provide a basis upon which this Court may grant relief. The Court will begin its analysis with Byrdsong's second ground for relief challenging the magistrate judge's compliance with Rule 11 of the Federal Rules of Criminal Procedure during his rearraignment before addressing his ineffective assistance of counsel claims and motions to amend.

### A.    Court's Compliance With Rule 11

As his second ground for relief in his § 2255 motion Byrdsong asserts the magistrate judge failed to comply with Rule 11 of the Federal Rules of Criminal Procedure during his rearraignment proceeding (Criminal Court File No. 433). Specifically, Byrdsong contends the Court failed to

establish a factual basis for his plea and make sure he understood the elements of the crime to which he pleaded guilty. Byrdsong is mistaken as the magistrate judge complied with Rule 11, explained the elements of the crime, and the government stated the factual basis for the government's case to which Byrdson agreed and acknowledged that he was pleading guilty because he was in fact guilty (Criminal Court File No. 420, at 20-23, Rearraignment transcript). If Byrdsong did not know the meaning of distribution or intercepted communication, as he now alleges, the time to voice his inability to understand those terms was during his rearraignment (Criminal Court File No. 434, at 10). In addition, Byrdsong is mistaken when he claims the magistrate judge should have had him state how he committed the offense of conspiracy before accepting his plea of guilty, as such is not required by Rule 11. Nevertheless, Byrdsong's factually incorrect and self-serving claims offer him no relief as his statements under oath preclude any relief on this claim.

Byrdsong's signed plea agreement and responses under oath during his rearraignment proceeding refute his claim that he lacked a full understanding of the elements of conspiracy. Moreover, Byrdsong has forfeited his right to make the claims he labels as his second ground for relief, as they could have been raised on direct appeal and are now procedurally defaulted as a result of his failure to do so. This forfeiture is subject to the caveat that the Court may review otherwise defaulted claims if the movant can demonstrate either that (1) he had good cause for not raising the arguments earlier and would suffer actual prejudice if they were not reviewed, or (2) that he is actually innocent of the offense. *Hicks v. United States*, 258 F. App'x 850, 852 (6th Cir. 2007). *See also Bousley*, 523 U.S. at 622; *Frady*, 456 U.S. at 167-68; *Peveler v. United States*, 269 F.3d 693 (6th Cir. 2001). Byrdsong has made no attempt to meet the two-prong *Hicks* test of cause and prejudice with respect to failing to appeal on the ground that his Rule 11 colloquy was deficient.

Even assuming he argues counsel's failure to appeal this issue amounts to cause, he is unable to demonstrate prejudice as the record reflects the magistrate judge complied with Rule 11 when conducting Byrdsong's rearraignment, and Byrdsong's responses under oath demonstrate he understood the elements of the crime of conspiracy, and he entered a knowing, intelligent, and voluntary plea.

Accordingly, relief will be **DENIED** on Byrdsong's claim the magistrate judge failed to comply with Rule 11 of the Federal Rules of Criminal Procedure when conducting his rearraignment.

### B.    Ineffective Assistance of Counsel Claims

Byrdsong also presents claims pertaining to the adequacy of counsel's performance in his case. The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right extends beyond the mere presence of counsel to include "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To establish a claim of ineffective assistance, Byrdsong must demonstrate two essential elements: (1) that counsel's performance was deficient, that is, below the standard of competence expected of attorneys in criminal cases; and (2) that counsel's deficient performance prejudiced the defense, i.e. deprived the defendant of a fair trial, rendering the outcome of the trial unreliable. *Id.*

In plea proceedings, the movant must show but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone

to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir., 1995) ("A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."), *cert. denied*, 516 U.S. 1058 (1996); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir.1994), *cert. denied*, 514 U.S. 1071 (1995); *Key v. United States*, 806 F.2d 133, 139 (7th Cir. 1986) (merely making a claim that he would have pleaded differently and gone to trial is insufficient); *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir. 1985) (bare allegation that defendant would not have pleaded guilty if her trial counsel had advised her properly is not sufficient to establish prejudice under *Strickland*). The standard by which a court reviews counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Sims v. Livesay*, 970 F.2d 1575, 1579-80 (6th Cir. 1992).

The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id*. at 697.

In his § 2255 motion, Byrdsong intertwines claims against counsel. First, the Court discerns Byrdsong contends that counsel coerced him into pleading guilty to conspiracy by advising him the proof was sufficient for a conspiracy charge, when, according to Byrdsong, he had only a

buyer-seller relationship with Lewis. Second, Byrdsong claims counsel also coerced him into accepting responsibility for drug quantities of the entire conspiracy rather than just amounts with which he was personally involved. Second, Byrdsong argues that counsel failed to object to the Court's allegedly erroneous sentencing determination and the Probation Officer's calculation of drugs attributed to him.

1. *There is no Evidence to Suggest Counsel Coerced Byrdsong's Plea*

Byrdsong first asserts that counsel coerced him to enter a guilty plea by advising him that because he bought cocaine from Marcus Lewis he was guilty of conspiracy, despite him only being involved in a buyer-seller relationship with Lewis. In addition, he alleges counsel also coerced him to pleading guilty to amounts of drugs that he knew Byrdsong never purchased from Lewis or others. Byrdsong, however, fails to provide any details of his conversations with counsel demonstrating any coercion on counsel's part.

At the outset, the Court observes Byrdsong is seemingly contesting the sufficiency of the evidence for his conviction. In effect, Byrdsong claims there is insufficient evidenced to demonstrate more than a buyer-seller relationship and that he conspired with the intent to distribute and possess with the intent to distribute five kilograms of cocaine and 50 grams of cocaine base. The Court disagrees.

Nevertheless, by pleading guilty Byrdsong waived his right to challenge the sufficiency of the evidence. *See United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008) ("This Circuit has specifically interpreted Rule 11(a)(2) to bar a defendant's challenge that evidence was insufficient to support a conviction, absent a conditional plea that specified the issue for preservation on appeal"). Moreover, during the plea colloquy, the magistrate judge specifically warned Birdsong

that, by pleading guilty, he was giving up his "constitutional right[] . . . to require the United States to prove [him] guilty beyond a reasonable doubt." (Criminal Court File No. 420, Rearraignment Tr., at 6-7). In addition to ensuring Byrdsong understood the elements of the crime to which he was pleading guilty, the magistrate judge also questioned Byrdsong to confirm that he understood and agreed with the government's summary of his offense conduct, which included the quantity of drugs attributable to the conspiracy and known to Byrdsong (Criminal Court File No. 420, at 23-24). *See United States v. Turner*, 272 F.3d 380, 389-90 (6th Cir. 2001) (unconditional guilty plea waived challenged to sufficiency of the evidence claim). Therefore, the record contains sufficient evidence to support Byrdsong's plea.

With regard to any alleged coercion, Byrdsong faces the significant hurdle of having sworn in open court that his guilty plea was voluntary. At his Rule 11 colloquy, the magistrate judge inquired, "has anyone threatened you or forced you in any way to plead guilty?" (Criminal Court Doc. 420 at 9). Byrdsong responded unequivocally: "No ma'am" (*Id.*). The Supreme Court has emphasized the weighty nature of sworn testimony: "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Byrdsong presents no extrinsic evidence that counsel coerced his guilty plea.

Considering factors such as the government's possession of 59 intercepted drug-related calls between Byrdsong and Lewis and a potential three-point reduction for acceptance of responsibility, defense counsel in this case had reasonable grounds for suggesting a guilty plea over a trial. Further, Byrdsong stated at his plea hearing that he was pleading guilty because he was, in fact, guilty

(Criminal Court File No. 420, at 23). As such, Byrdsong has not shown his plea was coerced or a "reasonable probability that, but for counsel's [alleged] errors, he . . . would have insisted on going to trial." *Short v. United States*, 471 F.3d 686, 691-92 (6th Cir. 2006) (quoting *Hill*, 474 U.S. at 59).

a.    <u>Buyer-Seller Argument</u>

Further, the buyer-seller argument is meritless. It is true that mere buyer-seller relationship does not necessarily indicate conspiracy, because "mere sales do not prove the existence of the agreement that must exist for there to be a conspiracy." *United States v. Cole*, 59 Fed. Appx. 696, 699 (6th Cir. 2003). However, the Sixth Circuit has concluded that evidence of advanced planning and multiple transactions involving large quantities of drugs may show that the defendant was involved in a conspiracy rather than a mere buyer-seller relationship. *See United States v. Nesbitt*, 90 F.3d 164, 167 (1996), *see also United States v. Anderson*, 89 F.3d 1306, 1310 (6th Cir. 1996) (holding that repeat purchases, purchases of large quantities or other enduring arrangements are sufficient to support a conspiracy conviction).

The quantity of phone calls and multiple-kilogram purchases of cocaine are indicative of Byrdsong's participation in and awareness of a greater distribution network. As the Sixth Circuit has explained, a conspiracy may be inferred from the totality of circumstances:

> Drug conspiracies often assume a vertical pattern of distribution, where each successive distributor sells a lower volume to any particular customer . . . . In a drug distribution chain conspiracy, it is enough to show that each member of the conspiracy realized that he was participating in a joint venture, even if he did not know the identities of every other member, or was not involved in all the activities in furtherance of the conspiracy. Evidence of repeat purchases provides evidence of more than a mere buyer-seller relationship, and the quantity of drugs may also support an inference of conspiracy.

*United States v. Robinson*, 547 F.3d 632, 641 (6th Cir. 2008) (internal citations and quotation marks omitted).

In sum, the factual basis contained in the plea agreement, which bears Byrdsong's signature,

12

states that agents intercepted 59 drug-related calls between Byrdsong and Lewis. The plea agreement further states that "defendant knew that the conspiracy entailed more than 5 kilograms of cocaine. . . ." Moreover, the factual basis announced during Byrdsong's rearraignment to which he agreed, reveals "Mr. Byrdsong would receive large amounts of cocaine from Mr. Lewis after having provided some of the money that Lewis paid Akins for the cocaine. . . . Mr. Byrdson would received cocaine in kilogram quantities at a time." (Criminal Court File No. 420, at 22). It is clear from these facts that Byrdsong was engaging in an enduring arrangement beyond a mere buyer-seller relationship and that such arrangement involved purchases of large quantities of cocaine. Accordingly, counsel's advise to plead guilty to conspiracy did not amount to coercion as the proof clearly demonstrates Byrdsong was engaged in the conspiracy rather than a simple buyer-seller relationship.

b.    Quantity of Drugs

Byrdsong mistakenly believes that a participant in a drug conspiracy is responsible only for that quantity of drugs for which he personally possessed and/or distributed (See Criminal Court Doc. 434, at 14-15). However, a defendant is properly held liable for "all reasonably foreseeable acts . . . of others in furtherance of jointly-undertaken criminal activity." USSG § 1B1.3(a)(1)(B). Byrdsong pleaded guilty to a conspiracy and "[g]enerally, a defendant involved in a drug-conspiracy is responsible for the drug quantities for which he is directly involved, and any quantity that is a reasonably foreseeable consequence of the conspiracy." *United States v. Anderson,* 333 Fed.Appx. 17, 26 (6th Cir. 2009) (citing *United States v. Caver*, 470 F.3d 220, 246 (6th Cir. 2007). So long as the entire scope of the conspiracy was reasonably foreseeable to a particular defendant, a court may properly use the threshold quantity for the entire conspiracy, rather than an amount specifically

attributable to that defendant. *See Robinson*, 547 F.3d at 638-39 ("[a]lthough a 'small-time' drug seller may not be responsible for all the transactions or actions of his associates, he is responsible for the conspiracy in which he participated").

Byrdsong's admission in his guilty plea that he knew that the conspiracy involved in excess of five kilograms of cocaine means that such quantity was unquestionably "reasonably foreseeable" to him. As such, he is properly held responsible for that sizeable quantity, notwithstanding his potentially having handled and distributed a lesser quantity. Because relevant conduct in the context of a conspiracy extends beyond the actions of Byrdsong to include those of his co-conspirators, counsel appropriately resolved that there was no basis upon which to object to the drug quantity and was not deficient in not raising an objection.

Accordingly, relief will be **DENIED** on Byrdsong's claim that counsel coerced him into pleading guilty to a conspiracy when he was only engaged in a buyer-seller relationship and to the amount of drugs of the conspiracy rather than the quantity of drugs for which he personally sold.

### 2. *Failure to Object at Sentencing*

In his final claim, Byrdsong argues counsel erred in not raising an objection to the sentencing proceedings, claiming his sentence was erroneously calculated. In his memorandum in support of the § 2255 motion, Byrdsong appears to argue that there was a factual error in the PSR as to the quantity of drugs attributable to Byrdsong (Criminal Court Doc. 433). Byrdsong objects to paragraph 14 of the PSR that states Akins supplied Marcus Lewis; therefore a group of individuals associated with Lewis were supplied drugs including Byrdsong and the other co-defendants listed in the indictment. According to Byrdsong, the PSR omitted the statement that Lewis would receive two or five kilograms of cocaine which would have demonstrated Byrdsong could not have

purchased or received 5 kilograms from Lewis since Lewis was distributing to numerous other people besides Byrdsong. This argument is frivolous. Byrdsong is well aware that he engaged in this drug business for several months and as he admitted under oath, Lewis would receive between two and five kilograms of cocaine from Akins once and sometimes twice per week. Therefore, in reality the amount of drugs in this conspiracy appears to have far exceeded the five kilograms of cocaine and more than 50 grams of cocaine base to which Byrdsong pleaded guilty to. Consequently, Byrdsong's challenge to the PSR is frivolous and wholly without merit.

In sum, as previously noted, this assertion is in direct contradiction to Byrdsong's statements in his plea agreement and in Court. The plea agreement states, "The defendant admits he knowingly participated in a conspiracy to distribute cocaine in the Eastern District of Tennessee during the charged time frame. The defendant knew that the conspiracy entailed more than 5 kilograms of cocaine and more than 50 grams of cocaine base." At his rearraignment, Byrdsong reaffirmed his desire to plead guilty immediately after the court clerk read the indictment, complete with the quantities in question (Criminal Court Doc. 420 at 11-12).

Moreover, had counsel objected to the stated drug quantities, more than likely it would have rendered Byrdsong ineligible for the full three-point downward adjustment of the offense level for acceptance of responsibility. Additionally, Byrdsong has not presented any evidence demonstrating these amounts are inaccurate.

To the extent Byrdsong is challenging some other aspect of the sentencing calculation, he has failed to factually support his claim that his sentence was erroneously calculated. Byrdsong has made no showing of what he claims was incorrect or identify what he claims is the correct sentence calculation. Notably, counsel did challenge the calculation of Byrdsong's sentencing guidelines.

The PSR reflected that based on a total offense level of 29 and a criminal history category of V, Byrdsong's Guidelines were calculated at 140-175 months imprisonment. However, counsel effectively argued to the Court that Byrdsong's criminal history category of V overstated his criminal history because the vast majority of Byrdsong's points were several years old and most were misdemeanor traffic charges. Counsel argued the prior possession of marijuana and possession of crack were the result of his addiction (Criminal Court File No. 421). The Court agreed with counsel and granted the motion and treated Byrdsong as having a criminal history category of IV instead of V which reduced his guidelines to 121 to 151 months. The Court sentenced Byrdsong to 130 months.

In sum, because the amount of drugs to which Byrdsong pled were admitted by him and reasonably foreseeable to him, they were properly attributed to him. Therefore, counsel's performance was not deficient for failing to object to the amount of drugs attributed to him in the PSR. Counsel effectively challenged the calculated sentencing guidelines on the basis that Byrdsong's criminal history category was overstated as a result of numerous traffic offenses and two drug offenses that were the result of his addiction. Accordingly, relief will be **DENIED** on Byrdsong's claim that his sentence was improperly calculated and counsel was ineffective for failing to challenge it as it is without merit.

### C.    Motions

Byrdsong filed three motions. Because the first one was filed shortly after the enactment of the Fair Sentencing Act of 2010, in reliance upon such act, the Court ordered the government file a reply. The Court did not have the government respond to the second or third motions.

1.    *Motion to Amend--Reduce Sentence Pursuant to Fair Sentencing Act of 2010*

In his first motion to amend, Byrdsong argues that his sentence should be reduced in light of the Fair Sentencing Act of 2010, which raised the threshold quantities of crack cocaine required to trigger a mandatory minimum under the Controlled Substances Act. Pub L. 111-220, 124 Stat. 2372 (Aug. 3, 2010) (Criminal Court File No. 462). The Fair Sentencing Act of 2010 applies to changes to federal crack sentencing. Byrdsong's sentence was based on a Guideline range calculated based on the powder cocaine attributable to him, thus, the act is not applicable to his sentence. Moreover, Byrdsong's motion will be **DENIED** as **MOOT** (Criminal Court File No. 462) in light of his later-filed motion which explicitly asked for relief under this act and which was denied (Criminal Court File Nos. 502, 503).

2.      *Motion for Evidentiary Hearing*

Byrdsong's motion to for evidentiary hearing will be **DENIED** because the files and records conclusively demonstrate Byrdsong is not entitled to relief under 28 U.S.C. § 2255 as his claims lack merit (Criminal Court File No. 468).

3.      *Motion to Amend–Failure to File Appeal*

In his second motion to amend Byrdsong requests to amend his § 2255 motion with a claim that counsel was ineffective for failing to pursue a direct appeal on his behalf (Criminal Court File No. 469). The motion to amend his § 2255 motion was filed after the expiration of the one year statute of limitations for filing a § 2255 motion.

Rule 12 of the Rules Governing Section 2255 Proceedings in the United States District Courts provides for the application of the Federal Rules of Civil Procedure when the Court deems it appropriate to dispose of motions filed under these rules. First the Court must determine if the amendment was timely filed because Byrdsong's proposed amendment is subject to the one year

statute of limitations period, applicable to a motion filed pursuant to 28 U.S.C. 2255. *See Oleson v. United States*, 27 Fed.Appx. 566 (6th Cir. Dec. 14, 2001) (Unpublished), *available at* 2001 WL 1631828 *3. If the amendment is barred by the § 2255 statute of limitations, the Court looks to the equitable tolling rules to determine whether that doctrine is applicable. If it is not, then the Court must determine whether the amendment relates back under Rule 15(c) of the Federal Rules of Civil Procedure to Byrdsong's previous claims. *Mayle v. Felix*, 545 U.S. 644, 656-57 (2005).

Byrdsong's motion to amend, which was filed on October 18, 2010, is untimely because it was filed more than one year after his judgment became final (Criminal Court File No. 469). The statute of limitations in Byrdsong's case began to run from the date on which his judgment of conviction became final. 28 U.S.C. § 2255(f)(1). Byrdsong was sentenced on December 18, 2008 (Criminal Court File No. 329). Byrdsong did not pursue a direct appeal. When a § 2255 movant does not pursue a direct appeal to the court of appeals, his conviction becomes final on the date on which the time for filing such appeal expired. *Sanchez-Castellano v. United States*, 358 F.3d 424, 425 (6th Cir. 2004). Byrdsong's judgment was entered on December 30, 2008, and at that time Fed. R. App. P. 4(b)(1)(A) provided that a notice of appeal had to be filed within ten (10) days after entry of the judgement from which he wished to appeal.[2] Rule 26(a) of the Federal Rules of Appellate Procedure provided that weekends and holidays were not counted in calculating the ten-day period. Therefore, under these rules, Byrdsong had until January 14, 2009, to file a notice of appeal. Thus, the one-year statute of limitations began to run on January 15, 2009, the day after the expiration of

---

[2]     Pursuant to amendments that took effect in December 2009, Rule 4(b)(1)(A) now requires a notice of appeal to be filed within fourteen days after entry of the judgment. Rule 26(a)(1)(B) directs that all days be counted in calculating a period of days, including holidays and weekends, unless the last day of the period falls on a holiday or weekend.

the time for filing a notice of appeal.

Byrdsong had one year from the time his judgment of conviction became final to file his § 2255 motion. Thus, Byrdsong was required to file his § 2255 motion no later than January 14, 2010. A motion filed by a prisoner is deemed filed when given to the prison authorities for mailing. *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997), (citing *Houston v. Lack*, 487 U.S. 266, 270-71 (1988)). Byrdsong gave prison authorities his motion to amend for mailing on October 18, 2010 (Criminal Court File No. 469). Byrdsong's motion to amend is time-barred as it was filed more than ten months after the expiration of the one-year statute of limitation for filing his § 2255 motion. Consequently, Byrdsong's motion to amend, is time-barred (Criminal Court File No. 469).

Although Byrdsong's one year statute of limitations expired prior to filing his motion to amend, the Court must determine whether equitable tolling is appropriate in this case because the one-year statute of limitations in § 2255 is subject to equitable tolling. *Solomon v. United States*, 467 F.3d 928, 935 (6th Cir. 2006) (applying equitable tolling to § 2255 motion). Equitable tolling, however, is applied sparingly. *Griffin v. Rogers*, 399 F.3d 626, 635 (6th Cir. 2005). The Supreme Court has instructed that, to be entitled to equitable tolling, a habeas petitioner must show: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)), *see also Hall v. Warden, Lebanon Correctional Insti*. 662 F.3d 745, 749-50 (6th Cir. 2011) (same) and *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010) (same).

Movant bears the burden of showing he is entitled to equitable tolling. *McClendon v.*

*Sherman*, 329 F.3d 490, 494 (6th Cir. 2003).  As previously noted, the doctrine of equitable tolling is used sparingly and, typically, is applied "only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003).  Byrdsong has failed to make either the diligent or extraordinary circumstance showing.  Indeed, information upon which Byrdsong relies is information he discovered more than a year ago as he knew counsel did not pursue a direct appeal on his behalf soon after sentencing.  Thus, the motion presents no basis for equitable tolling.  Since Byrdsong has failed to offer any explanation for the delay, the Court finds he has failed to demonstrate that equitable tolling is appropriate in his case.

Finally, the Court looks to the relation-back provision in Rule 15(c)(2) of the Federal Rules of Civil Procedure which provides pleading amendments relate back to the date of the original pleading when the claim asserted in the amended plea "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  "Rule 15(c)(2) relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle v. Felix,* 545 U.S. at 659 (citations omitted).  The Supreme Court observed that if claims asserted after the one-year period could be revived simply because they related to the same trial, conviction, or sentence, AEDPA's limitation period would have slim significance.  *Id.* at 662.

Byrdsong's amendment, however, does not escape the Antiterrorism and Effective Death Penalty Act ("AEDPA") statute of limitations by "relating back" to the claims in his timely filed original § 2255 motion because his amendment raises an entirely new argument that does not relate back to any of the ineffective assistance claims in his original § 2255 motion.  *See Oleson v. United*

*States*, 2001 WL 1631828 *3 (6th Cir. Dec. 14, 2001) (Unpublished).  Amendments that seek to add new legal theories or present new claims based on different factual underpinnings are not permitted. *Dean v. United States*, 278 F.3d 1218, 1221 (11th Cir. 2002).  Byrdsong's claim that counsel was ineffective for failing to pursue a direct appeal on his behalf is separate and distinct from the ineffective assistance claims presented in the original § 2255 motion.  Thus, this new claim does not relate back to the timely § 2255 motion.

Nevertheless, even if Byrdsong's motion to amend had been timely, it would have been denied as futile because counsel's failure to pursue an appeal in this case did not amount to ineffective assistance of counsel.  An attorney's decision not to file an appeal is professionally unreasonable only where a rational defendant would want to make an appeal or where a particular defendant reasonably demonstrated to counsel an interest in doing so.  *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000).  In light of the evidence to the contrary contained in the thorough factual basis in the plea agreement and a detailed explanation of the charges at the rearraignment, there was no rational basis upon which an attorney could file an appeal.  *See, e.g., Maples v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999) ("Counsel could not be constitutionally ineffective for failing to raise . . . meritless arguments").  Indeed, counsel appeared far from ineffective in court, vigorously and successfully advocating a discretionary reduction in Byrdsong's criminal history categorization over government objection (Criminal Court File No. 421, at 9-11).

Additionally, the record does not reflect any reason for counsel to have believed Byrdsong wished to file a direct appeal.  Crucially, Byrdsong fails to present any facts in support of the claim in his second motion to amend that he told counsel he wished to appeal but was ignored.  Such facts are indispensable, as Byrdsong must set forth sufficient facts and arguments to warrant relief.  *See*

*Green*, 454 F.2d at 53. As such, Byrdsong has not met the two-part test under *Strickland*, and there is no basis upon which this Court may grant relief.

Accordingly, Byrdsong's untimely motion to amend has no merit and will be **DENIED** as untimely (Criminal Court File No. 469).

## V.    CONCLUSION

For the reasons set forth above, the Court concludes Byrdsong is not entitled to any relief under 28 U.S.C. § 2255. In addition, the Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be entirely frivolous. Therefore, any application by Byrdsong for leave to proceed *in forma pauperis* on appeal will be **DENIED.** Fed. R. App. P. 24. Byrdsong has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253; Fed. R. App. P. 22(b), or that reasonable jurists would disagree on the resolution of this matter. Thus, a certificate of appealability **SHALL NOT ISSUE**. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

An appropriate judgment shall enter.


**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**